UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LISA N.,

                    Plaintiff,

v.                                         CASE NO. 6:24-cv-06572
                                         (JGW)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docs. 6, 10), as well as Plaintiff's reply brief (Doc. 11.) Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 6) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 10) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.    RELEVANT BACKGROUND

### A.  Procedural Background

On November 19, 2021, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. (Tr. 59, 240-44.) On January 11, 2022, Plaintiff also filed an application for supplemental security income disability benefits. (Tr.

71, 85.)  The alleged disability onset date for both applications was identified as August 20, 2019.  (Tr. 58, 71.)  Plaintiff's claims were denied initially and on reconsideration.  (Tr. 82, 83, 112, 113.)  She then timely requested a hearing before an Administrative Law Judge (ALJ) and appeared with counsel for a telephonic hearing before ALJ Kenneth Theurer on December 13, 2023.  (Tr. 33-57.)  On January 12, 2024, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  (Tr. 7-22.)  The Appeals Council denied Plaintiff's request for review, (Tr. 1-6), and Plaintiff timely filed her appeal to this Court.

### B.    Factual Background[1]

Plaintiff was born on July 18, 1967, and alleged disability beginning on August 20, 2019.  (Tr. 58.)  Plaintiff completed high school and attended a year and a half of college. (Tr. 40.)  Her disabling conditions were initially alleged to include problems with her knees, sciatica, and sleep apnea.  (Tr. 59, 71.)

At the hearing, Plaintiff testified about the issues she experienced with her knees, explaining that she can no longer work because of them. She described that if she stands for too long, her knees cause her significant pain, and if she sits for too long, they throb. (Tr. 42-43.)  Plaintiff explained that, for a period of time, she received injections for them, but they did not work. (Tr. 43.)  She also attended physical therapy for a few weeks, but she indicated that seemed to make the pain worse.  (*Id.*)  She also identified certain medication she takes for the pain.  (*Id.*)

Plaintiff also noted that she had back pain, and has had it, since she was a teenager.  (*Id.*)  She denied obtaining any treatment for her back issues.  (*Id.*)  Plaintiff

---

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ.  Other facts will be developed throughout the opinion as relevant to the Court's analysis.

also indicated that she had sleep apnea and used a CPAP every night. (Tr. 44.)  She testified that she had been using her CPAP for two years and it worked. (*Id.*)

Plaintiff testified she had previously worked as a receptionist and noted she probably could return to a receptionist position, but she was unable to find a job. (*Id.*)  She expressed concern about going up and down stairs, as she did at her old job, but then noted that she currently went up and down stairs at her house to do laundry, utilizing the stairs an estimated eight times a week.  (Tr. 45.)  Plaintiff explained that she could sit for about a half hour before needing to get up as a result of knee pain.  (Tr. 45-46.)  She indicated she would need to be up and move around for about ten minutes before she could sit back down.  (Tr. 46.) She noted that, after about an hour and a half or two hours, she would need to sit or recline for a longer period of time. (Tr. 47.)  Plaintiff described that in her average day, she stays in a recliner for seven or eight hours.  (Tr. 43.)

### C.    ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2025. (Tr. 12.)

2. The claimant has not engaged in substantial gainful activity since August 20, 2019, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.). (Tr. 12.)

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, a disorder of the knees and obesity (20 CFR 404.1520(c) and 416.920(c)). (Tr. 13.)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 13.)

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is unable to climb ladders/ropes/scaffolds, and she must avoid work at unprotected heights or in conjunction with dangerous machinery. The claimant can occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl. (Tr. 14.)

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). (Tr. 16.)

7.  The claimant was born on July 18, 1967, and she was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).  (Tr. 16.)

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964). (Tr. 16.)

9.  The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968). (Tr. 17)

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569a, 404.1568(d), 416.969, 416.969a, and 416.968(d)). (Tr. 17.)

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 20, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). (Tr. 18.)

### D.    Medical Opinion Evidence

The ALJ considered several opinions in formulating his RFC.  After he defined the

RFC, he addressed the opinions of the agency reviewers:

> The residual functional capacity above is based on the opinions of S. Naroditsky, M.D., and S. Padmaraju, M.D., and these opinions are most persuasive (Exhibit 1A, Exhibit 2A, Exhibit 5A and Exhibit 6A).
>
> The medical consultants opined the claimant can perform light exertion with four hours of standing and walking (Exhibit 1A, Exhibit 2A, Exhibit 5A and Exhibit 6A). They stated the claimant can never climb ladders/ropes/scaffolds but can occasionally perform all other postural activities. Finally, they opined the claimant should avoid concentrated

4

exposure to hazards. In support of these opinions, they cited a slow, normal gait. They cited limited range of motion of the knees and spine. They cited diagnostic imaging of the knees and spine. The opinions are consistent with other records that describe a normal gait and no need for an assistive device for ambulation (Exhibit 3F, p.2). The opinions are consistent with the claimant's extremely conservative course of treatment, as she has only participated in physical therapy and received limited injections. They are also consistent with the claimant's own statement that her knee symptoms are controlled with medication (Exhibit 1F, p.1). Finally, the opinions are consistent with records that indicate the claimant should exercise and remain active (Exhibit 1F). The medical consultants reviewed the record, and they have professional expertise. Based on the above, these opinions are most persuasive.

(Tr. 15.)

Thereafter, he considered the opinion of examining consultant Dr. Justine Magurno, concluding it was less persuasive:

The opinion of Justine Magurno, M.D., is less persuasive (Exhibit 2F). She found mild limitations for reaching, pushing and pulling; moderate limitations for walking and standing; and marked limitations for squatting, bending, lifting, carrying and stair climbing (Exhibit 2F, p.5). This was based on an examination of the claimant. However, these significant limitations are not consistent with the claimant's very conservative course of treatment. In fact, the claimant testified that she has not really had any treatment for her back. The opinion is also contrary to the claimant's statement that she could perform receptionist-type work if she could find a job (hearing testimony). Since this opinion is not fully supported by the record, it is less persuasive.

(Tr. 16.)

Finally, the ALJ addressed the opinion of treating physician Dr. Hernandez-Hermann:

The opinion of Marta Hernandez-Hermann, M.D., is less persuasive (Exhibit 5F). She opined the claimant can sit six hours in a workday; stand/walk one hour in a workday; frequently lift/carry ten pounds; and occasionally lift/carry over ten pounds (Exhibit 5F, p.4). However, she also stated the claimant would be off-task more than one-third of the workday. In support of this, she cited knee pain. However, pain is a symptom, and the objective findings of record do not support this degree of limitation. Specifically, the claimant's gait is not impaired, and diagnostic imaging of the left knee was unremarkable. In addition, the claimant herself indicated her knee

symptoms were controlled with medication (Exhibit 1F, p.1). Since this opinion is not supported by the record, it is less persuasive.

(*Id.*)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

### B.    Standard to Determine Disability

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.

20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

III.   ANALYSIS

Plaintiff challenges the ALJ's RFC formulation, focusing on the ALJ's evaluation of the record.  Her primary arguments target the ALJ's analysis of the medical opinion evidence, arguing that the ALJ erred by overly relying on the non-examining agency consultants, as prohibited by the Second Circuit, while improperly disregarding the consultative examining physician and treating physician.  (*See* Doc. 6-1 at 4-14, 16-17,

17-19.)  She argues that the opinions by the agency reviewers were not as well supported nor as consistent with the record as characterized by the ALJ and, instead, the ALJ should have assigned more weight to the other opinions. Accordingly, Plaintiff contends that the ALJ's RFC is not supported by substantial evidence. Plaintiff also argues that the ALJ erred in failing to acknowledge or discuss Plaintiff's functional testing set forth in her initial physical therapy evaluation.  (*See id.* at 19-21.)

As a preliminary matter, the regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not a medical finding.  20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021).  As such, the RFC conclusion "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  *Schillo*, 31 F.4th at 78. Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  This naturally requires the ALJ to reconcile conflicting medical evidence in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

However, "an ALJ is not permitted to 'cherry pick' evidence that supports his RFC finding." *Michelle J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00306 CJS, 2023 WL 2623587, at *4 (W.D.N.Y. Mar. 24, 2023) (defining cherry-picking as "inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source") (citations omitted).   "Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that

8

supports his RFC determination while ignoring other evidence to the contrary." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022).  However, "an allegation of cherry-picking is seldom successful because crediting it would require a court to re-weigh record evidence," and "what a claimant may label as cherry-picking can often be described more neutrally as weighing the evidence." *Regina M. v. Comm'r of Soc. Sec.*, No. 6:23-CV-06629 EAW, 2025 WL 899008, at *3 (W.D.N.Y. Mar. 25, 2025) (*quoting Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21, 2022)) (quotations and citations omitted).

With regard to an ALJ's consideration of medical opinion evidence, the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, provide that the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source in the opinion, the more

persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between a medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

As an initial matter, an ALJ is permitted to rely on a state agency medical consultant's opinion, as such opinions can constitute substantial evidence when they are consistent with the medical evidence in the record. *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (recognizing that the Commissioner's regulations permit the opinions of non-examining sources to constitute substantial evidence in support of the ALJ's decision and can even override a treating source's opinion); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 126 (2d Cir. 2016). Here, as set forth below, the Court finds that the agency reviewer opinions were consistent with the record evidence and thus constitute substantial evidence to support the ALJ's RFC.

Having carefully reviewed the record, the Court finds that the ALJ properly found the agency reviewer opinions to be supported.  The fact is, as the opinions recognize, the record does reflect that Plaintiff had a mostly normal gait, (*see, e.g.,* Tr. 447), some limitations in the range of motion in Plaintiff's knees and back (*see, e.g.,* Tr. 441), and diagnostic testing (*see, e.g.,* Tr. 64-67, 91-94), all of which supported the agency reviewers' opinions.  Indeed, the focus of an ALJ's evaluation of the supportability of an opinion is whether the conclusion is supported—not whether it sets forth a comprehensive summary of the evidence.  *See Jacqueline L.*, 515 F. Supp. 3d at 7 (citing 20 C.F.R. § 416.920c(c)(1)).  Contrary to Plaintiff's argument, the agency reviewers set forth sufficient information to both support and explain their ultimate opinion as required by the pertinent regulations.

Significantly, it is the function of the ALJ to thoroughly and fairly weigh the evidence.  *Matta*, 508 F. App'x at 56 (noting that an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.")  And ALJ Theurer did precisely that, as he detailed Plaintiff's treatment record, evaluated the medical opinions, assigning them each weight, and then formulated an RFC consistent with the entirety of the record. Indeed, the ALJ identified almost all the evidence Plaintiff contends the agency reviewers excluded.  (*See* Tr. 13) (acknowledging Plaintiff's limited range of motion in her back and knees, as well as the diagnostic imaging of each; recognizing that Plaintiff's gait was characterized as "antalgic" at least once); (Tr. 15) (noting Plaintiff's difficulty with sitting and climbing stairs).  Nonetheless, an ALJ is not required to identify every piece of evidence in his decision, and the failure to identify evidence does not mean it was not considered by the ALJ.  *Brault v. Comm'r of Soc. Sec.*,

683 F.3d 443, 448 (2d Cir. 2012); *see also Shane W. v. Comm'r of Soc. Sec.*, No. 1:23-cv-01313-CJS, 2025 WL 723116, at *9 (W.D.N.Y. Mar. 6, 2025).    Nonetheless, a fair reading of the ALJ's opinion reveals that he considered the entirety of the record, not engaging in cherry-picking, as Plaintiff argues.

Similarly, the agency reviewers' reliance on portions of Dr. Magurno's opinion to conclude that lesser restrictions were appropriate does not detract from their opinions' supportability as Plaintiff contends.  (*See* Doc. 6-1 at 7.)  Again, an opinion should include those facts found to be persuasive and support a conclusion, and moreover, the agency reviewers on reconsideration expressly explained the reason for the deviation.  (*See* Tr. 94) (noting that Dr. Magurno's opinion relied heavily on subjective reports of symptoms and limitations and concluding the totality of the evidence did not support the opinion).

The Court also finds that the ALJ properly determined that the agency reviewer opinions were consistent with the record as a whole.  While Plaintiff identifies certain evidence to support her position that she is disabled, that does not detract from the fact that the record contained the facts identified by the ALJ. As noted above, the record generally reflected Plaintiff had a normal gait. (*See* Tr. 447.)  And while Plaintiff takes issue with the ALJ's characterization that Plaintiff engaged in "extremely conservative treatment," it is not an outlandish reading of the record.[2]  Indeed, the record contains less than one hundred pages of medical records, and the treatment notes reflected visits with her primary care physician, records from four visits with an orthopedic provider for

---

[2] The Court finds no error in the ALJ's characterization of Plaintiff's treatment. The ALJ did not reject Plaintiff's claim of disability solely because of her treatment, but rather identified it as a factor in his decision. This is permissible. *Snyder v. Comm'r of Soc. Sec.*, No. 22-277-cv, 2023 WL 1943108, at *3 (2d Cir. Feb. 13, 2023) (summary order) ("[T]he regulations explicitly state that treatment and methods used to alleviate symptoms, and how symptoms affect patterns of daily living, are relevant to the ALJ's assessment.").

injections in her knees, and three physical therapy visits during approximately two years. (*See* Tr. 395-476.)  Moreover, the ALJ explicitly recognized in his decision that Plaintiff received injections, engaged in physical therapy,[3] and utilized medication.  (Tr. 15.)

Further, while these records reflect that Plaintiff experienced pain and some limitations resulting from her knee pain, they also show that Plaintiff manages these conditions through medication. (*See* Tr. 395, 398-99) (reflecting Plaintiff desired to discontinue steroid injections and continue medication, "stating symptoms are controlled").  Despite Plaintiff's attempts to avoid this fact, the Court notes that this statement was taken from one of the more recent treatment notes as reported by Plaintiff. (*See id.*)  And physical therapy records reflected improvement in pain with exercises. (*See* Tr. 462-64) (reflecting decreased pain with use of tape and the ability to tolerate increased intensity of exercise without an increase in pain).  The record also contained multiple instances of Plaintiff being counseled to exercise and lose weight. (*See, e.g.,* Tr. 396, 398, 406.)  Therefore, the opinions of the agency reviewers were consistent with the record overall.

Additionally, the ALJ recognized that the agency reviewers assigned light exertional restrictions to Plaintiff, yet the ALJ limited Plaintiff to sedentary work with additional limitations. Thus, it is clear to the Court that the ALJ properly discharged his obligation by considering the whole of the record in fashioning an RFC specific to Plaintiff's abilities.  *See April W. v. Comm'r of Soc. Sec.*, No. 1:24-cv-00044-MAV, 2024

---

[3] While Plaintiff contends that the ALJ erred by not addressing her initial physical therapy evaluation, the Court disagrees.  The ALJ set forth that Plaintiff attended physical therapy, and the records reflect improvement in the few visits she attended.  (*See* Tr. 462-64.)  Additionally, an ALJ is not required to identify every piece of evidence considered, and the failure to identify a piece of evidence does not mean it was not considered by the ALJ.  *See Brault*, 683 F.3d at 448.

WL 4804778, *5 (W.D.N.Y. Nov. 14, 2024) (recognizing that an ALJ "is free to reject portions of medical-opinion evidence not supported by objective evidence")(quoting *Demeca P. v. Comm'r of Soc. Sec.*, No 1:22-cv-0504, 2024 WL 4505265, at *4 (W.D.N.Y. Oct. 16, 2024)).  Moreover, "[r]emand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record." *See Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *4 (W.D.N.Y. Mar. 6, 2018).  And the burden to show the necessity of a more limiting RFC rests with Plaintiff, and she has failed to carry this burden. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (recognizing that the plaintiff has the burden to prove a more restrictive RFC).

Plaintiff's arguments regarding the ALJ's evaluation of the medical opinion evidence, and her allegations that the ALJ (and the agency reviewers) cherry-picked the record are, at their core, an invitation to this Court to reweigh the evidence, which is simply not a basis for remand. *See David C. v. Comm'r of Soc. Sec.*, No. 6:23-cv-06510-CJS, 2024 WL 4347151, *18 (W.D.N.Y. Sept. 30, 2024) (citing *Lisa M. o/b/o J.S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00292 EAW, 2023 WL 3943997, at *3 (W.D.N.Y. June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's determination.")); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016)). For this same reason, Plaintiff's arguments that the Court should have awarded more weight to the opinions of Dr. Magurno and Dr. Hernandez-Hermann fail.[4]  The Court is plainly prohibited from re-weighing the evidence.  *See Krull*, 669 F. App'x at 32.

---

[4] Plaintiff also argued that the ALJ erred in not expressly addressing the portion of Dr. Hernandez-Hermann's opinion that Plaintiff must switch positions every hour.  However, it is clear from the ALJ's decision and the record that the ALJ rejected such a limitation.  He explicitly found her opinion as a whole to be less persuasive, noting that it was not supported by the record. (Tr. 16.)  Indeed, Plaintiff does not identify any treatment record that would support such a limitation.  Thus, the ALJ was not obligated to address this restriction in his RFC. *See Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (per curiam) (recognizing that remand is not necessary when the Court is "able to look to other portions of the ALJ's

And while Plaintiff identifies certain evidence that may be viewed as supporting her position, at most she identifies a conflict in evidence, which is to be resolved by the ALJ. *See Veino*, 312 F.3d at 588. And once resolved by the ALJ, the factual findings cannot be overturned by this Court unless "a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (emphasis in original) (citation omitted).

In light of the evidentiary record as detailed above, including the evidence reflecting that Plaintiff's knee pain is controlled by medication, Plaintiff has sought no treatment for her back issues, and that she "probably could" return to receptionist work, the Court concludes that the ALJ did not err in relying on the state agency reviewers' opinions, and that the ALJ's evaluation of the opinions was supported by substantial evidence. Plaintiff has simply not shown that "the record requires a reasonable factfinder to reach a different result." *See Spottswood v. Kijakazi*, No. 23-54-cv, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (summary order).

## IV.     CONCLUSION

Based on the foregoing, the Court finds no basis for remand. **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 6) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 10) is **GRANTED**.

---

decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.") *See also Ryan on Behalf of V.D.C. v. Comm'r of Soc. Sec.*, No. 21-2947-CV, 2022 WL 17933217, at *2 (2d Cir. Dec. 27, 2022) (declining to "remand for a clearer explanation because, looking at the whole decision, we are not 'unable to fathom the ALJ's rationale in relation to evidence in the record.'" (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (internal quotations and citations omitted)).

The Clerk of Court is **DIRECTED** to close this case.


Dated: March 26, 2026                          J. Gregory Wehrman
Rochester, New York                            HON. J. Gregory Wehrman
                                               United States Magistrate Judge